UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CATHY JEAN STAGGS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-137-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Cathy Jean Staggs ("Staggs" or the "Claimant") and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner.") [Record Nos. 11, 13] Staggs argues that the Administrative Law Judge ("ALJ") assigned to her case erred in concluding that she was not disabled within the meaning of the Social Security Act (the "Act"). Specifically, she asserts that the ALJ did not properly evaluate her subjective complaints and that the ALJ's decision is not supported by substantial evidence.

Staggs asks the Court to direct the Commissioner to award her benefits or, alternatively, remand this matter to the Commissioner for further consideration. The Commissioner contends that the ALJ properly evaluated the evidence and that his decision should be affirmed because it is supported by substantial evidence. The Commissioner's motion will be granted and Staggs' motion will be denied for the reasons that follow.

## I.

Staggs filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act on April 24, 2015. [Administrative Transcript; hereafter, "Tr.," 204] Staggs requested a hearing before an ALJ after the application was denied initially and upon reconsideration. [Tr. 115, 122, 129] She appeared before ALJ Jonathan Leiner for an administrative hearing in March 2017. [Tr. 27-70] ALJ Leiner denied benefits in a written decision on August 31, 2017. [Tr. 10-22] The Appeals Council affirmed the ALJ's decision in March 2018. [Tr. 1-5] Therefore, the Claimant has exhausted her administrative remedies and the matter is ripe for review under 42 U.S.C. § 405(g).

## II.

Staggs was fifty-three-years-old at the time of her application for benefits. [*See* Tr. 70, 204.] She completed the eighth grade and has a general equivalency diploma ("GED"). [Tr. 345] Staggs worked at Advance Auto Parts in Williamsburg, Kentucky, from 1999 until 2014. [Tr. 255-56, 345] She sustained an injury when she fell from a ladder at work in March 2013. [Tr. 184-86, 240] Staggs eventually returned to work after the fall, but alleges that she became unable to work on May 3, 2014, due to lingering problems with her neck, back, and the left side of her body. [Tr. 35-36]

Staggs testified during the administrative hearing that low back pain was her worst problem and that it radiated down to her left knee. [Tr. 37-38] She reported that she could only sit, stand, or walk for about ten minutes at a time. [Tr. 44-45, 47] Staggs also stated that she was unable to climb a flight of stairs and that she could not lift a gallon of milk and carry it a short distance. [Tr. 48]

Staggs lived with her boyfriend and one of her adult children, as well as her nine-year-old grandson. [Tr. 49] She reported that she sometimes tried to fold clothes, but she was mostly unable to perform any housework [Tr. 49-51, 242-44] Staggs also stated that she required a cane to walk, and needed assistance stepping into the tub and bathing her lower body. [Tr. 52]

David Grant, APRN, at Ho Physicians Services, treated Staggs for low back pain from 2013 through 2015. [Tr. 237, 320-25; 409-46] Grant noted that Staggs had reduced range of motion in the lumbar spine and some tenderness in the low back area. However, treatment was conservative and was limited to pharmacologic management. *See id.* Grant issued a statement on November 4, 2014, indicating that Staggs had "unstable gait" and could perform "no long periods of standing or sitting . . . no climbing, pulling, pushing," and could not lift items weighing more than five pounds. [Tr. 413]

Staggs has undergone multiple diagnostic imaging tests. She received an x-ray of her lumbar spine at the Jellico Community Hospital in May 2014. [Tr. 296] The x-ray was unremarkable, aside from mild degenerative changes at the L5-S1 level. *Id.* An MRI of the lumbar spine was performed in December 2014. [Tr. 311] The results were normal for Staggs' age with the exception of L5-S1, which had a "mild central protrusion with associated annular tear and minimal extrusion component." *Id.* An MRI of Staggs's cervical spine was performed in July 2013. [Tr. 297] The MRI reflected a mild diffuse disc bulge at the C6-C7 level, resulting in mild bilateral neural foraminal narrowing. *Id.* Staggs's left foot was x-rayed in November 2013 due to complaints of foot pain. [Tr. 298] This x-ray revealed a heel spur, but was otherwise normal. *Id.*

Magdy El-Kalliny, M.D., and Alisha Tarter, PA-C, treated Staggs for low back pain at the Lake Cumberland Neurosurgical Clinic in late 2014 and early 2015. Staggs advised these providers that her pain rated nine to ten out of ten, and radiated down her entire leg. [Tr. 307, 309] Dr. El-Kalliny recommended epidural steroid injections and advised Staggs to lose weight. [Tr. 308] He also recommended that she not lift, push, or pull more than five pounds based on the disc bulge and annular tear seen on the lumbar MRI. *Id.* El-Kalliny planned to follow-up with Staggs in ten months, but there is no indication that this follow-up visit occurred. *Id.*

William Waltrip, M.D., performed a consultative examination on June 29, 2015. [Tr. 313] Staggs informed Dr. Waltrip about her fall in 2013 and the resulting problems with her back and left lower extremity. *Id.* She also reported that she injured her left ankle and left shoulder in 2014. [Tr. 313-14]

Although Staggs could not squat or walk heel-to-toe and tandem, there was no loss of motor strength or fine touch. [Tr. 315] Dr. Waltrip determined that Staggs would have difficulty walking more than a few steps without use of her cane, but that she should be able to lift objects of at least 20 pounds without limitation. [Tr. 316] Waltrip found that Staggs could raise both arms well above shoulder level—to 150 degrees. [Tr. 317] While she had some limitation of flexion and extension of her lumbar spine, she had no motor dysfunction, sensory loss, or reflex abnormalities. [Tr. 317-18] Additionally, Staggs had good grip strength and could perform fine and gross manipulations. [Tr. 317]

Donna Sadler, M.D., reviewed Staggs' file on December 30, 2015. [Tr. 84-98] After considering all of the medical evidence, she opined that Staggs could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds. [Tr. 94] Dr. Sadler also

believed that Staggs could sit and stand and/or walk for about six hours in an eight-hour workday. *Id.* She reported that Staggs should avoid concentrated exposure to vibration and even moderate exposure to hazardous machinery and heights. [Tr. 95] Sadler commented that Staggs' subjective complaints were only partially credible in light of the objective evidence in the record. *Id.*

Annette Freel, M.S., performed a psychological consultative examination in December 2015. [Tr. 344] Staggs advised Freel that she had problems with memory, concentration, understanding, and completing tasks. *Id.* Freel administered the Weschsler Adult Intelligence Scale-Fourth Edition, which tests intellectual ability and cognitive strengths and weaknesses. [Tr. 348] Staggs' full-scale IQ fell within the borderline range, and her processing speed was significantly better developed than her nonverbal reasoning and working memory. *Id.* Staggs also took a Wide Range Achievement Test, which indicated that she could read at a fourth-grade level. [Tr. 350]

Freel concluded that Staggs had slight limitations with respect reasoning and using judgment and insight in a work setting. *Id.* She further reported that Staggs' ability to understand, remember, and carry out instructions toward the performance of simple, repetitive tasks were affected with slight limitations. *Id.* Freel also felt that Staggs' cognitive and behavioral symptoms would cause slight limitations with respect to her abilities to sustain attention, concentration, and persistence toward the performance of simple, repetitive tasks. *Id.* However, Freel believed that Staggs' ability to respond appropriately to supervision and co-workers in a work setting was not affected by her impairment. [Tr. 351]

Kay Barnfield, Psy.D., reviewed Staggs' file on December 28, 2015. [Tr. 84-92] She determined that Staggs' alleged mental impairments were causing no more than mild

limitations in her mental residual functional capacity and were not severe. [Tr. 92] She also found Staggs' allegations partially credible, as they were reasonable, but the severity was not supported by the evidence. Staggs had not had any mental health treatment as an adult and reported a relatively high level of functioning, including shopping alone and transporting her grandson to and from school. *Id.*

ALJ Leiner determined that Staggs did not have an impairment or combination of impairments that met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. He concluded, however, that Staggs had the severe impairments of back disorder and obesity. [Tr. 15] After considering the entire record, the ALJ found that Staggs had the residual functional capacity ("RFC") to perform a broad range of medium work as defined in 20 C.F.R. § 404.1567(c). Specifically, ALJ Leiner determined that Staggs could

> lift 50 pounds occasionally and 25 pounds frequently. She can stand and walk for six hours and can sit for six hours in an eight-hour workday. The claimant could frequently climb ramps and stairs, she can frequently climb ladders, ropes, and scaffolds, and she can frequently balance, stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to vibration. She cannot tolerate even moderate exposure to heights or to machinery.

[Tr. 17] Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Staggs was capable of performing. [Tr. 21, 66-67] Accordingly, ALJ Leiner concluded that the Claimant was not disabled under the Social Security Act. [Tr. 21-22]

## III.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)

(citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work.  If she can, she is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.

**A.  The ALJ properly considered Staggs' subjective complaints of pain.**

The Claimant contends that ALJ Leiner erred in applying the two-step process for analyzing subjective complaints of pain. However, her entire argument consists of a single paragraph stating, essentially, that the ALJ failed to consider all of the evidence and that Skaggs' testimony regarding her pain level is "uncontradicted in the record." [Record No. 11-1, p. 13] The Claimant has been cautioned that the Court will not undertake an open-ended review of the administrative record to find support for her arguments. [Record No. 10, pp. 3-4] *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Regardless, it is clear that the ALJ sufficiently addressed Staggs' subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017). The ALJ first

determined that Staggs had medically-determinable impairments that could reasonably be expected to cause the symptoms she alleged. *See* 20 C.F.R. § 404.1529(b). Specifically, he concluded that Staggs' low back impairment could cause some of the symptoms she alleged. [Tr. 19] However, her statements concerning the intensity, persistence, and limiting effects were inconsistent with a lumbar MRI, which revealed relatively mild degeneration. *Id.*

And the ALJ considered other evidence, to the extent Staggs' statements regarding the limiting effects of her pain and psychological symptoms were not substantiated by objective evidence. *See* 20 C.F.R. § 404.1529(c)(3). Staggs reported that hydrocodone, gabapentin, prescription-strength ibuprofen, and a muscle relaxer did little to reduce her pain, despite the relatively mild results with objective testing. [Tr. 17] She did not find physical therapy, a pain injection, or home remedies helpful. *Id.* Further, Staggs described pain in a non-physiological pattern, *i.e.*, her entire left side including her lift hip throbbing and an inability to lift her left arm, and dropping items with her left hand. [Tr. 20]

The ALJ's credibility determinations are given great weight, particularly since he is tasked with observing the Claimant's demeanor and credibility. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). Further, the Claimant has not identified any error in the ALJ's application of the two-step process to her subjective complaints of pain. Accordingly, there is no basis to disturb the ALJ's ruling on this ground.

**B.    The ALJ's decision is supported by substantial evidence.**

Staggs contends that the ALJ's decision that she is not disabled is not supported by substantial evidence. [Record No. 11-1, p. 9] She specifically argues that the ALJ "completely disregarded" the treating source opinion of David Grant, APRN, who stated she could lift no more than five pounds. However, Grant, a nurse practitioner, is not an acceptable medical

source under the "treating source rule" and his opinion is not entitled to controlling weight.[1] Grant did not provide reasons for the extreme limitations he assigned and, as the ALJ explained, the limitations were generally inconsistent with the record. Accordingly, the ALJ gave Grant's opinion little weight. [Tr. 18]

Contrary to the claimant's argument, Grant's opinion was at odds with that of consulting examiner William Waltrip, who opined that Staggs could lift 20 pounds. And the ALJ's RFC is supported by the opinion of consulting source Donna Sadler, who believed Staggs could lift up to 50 pounds and walk, sit, or stand up to six hours per workday. [Tr. 94] Although Staggs testified that she relied on a cane to walk, it is unclear that any physician actually prescribed the cane, and no physician reported that Staggs' lower extremity strength was significantly compromised.

As the ALJ discussed, the objective tests indicated that Staggs suffered from mild impairments. [Tr. 19] Further, she reported that she was able to drive, shop, and care for her grandson, which supports the ALJ's findings that the severity her symptoms was exaggerated. [*See* Tr. 243-50.]

V.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

---

[1] The treating source rule applies in claims filed before March 27, 2017. *See* 20 C.F.R. 404.1527.

2. Plaintiff Cathy Jean Staggs' Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

Dated: October 2, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge